## KISSOCK *vs.* GRANT.

Where the affidavit on which a justice of the peace issues an attachment contains some legal evidence tending to show that the defendant has departed from the county where he last resided, with intent to defraud his creditors, it is sufficient to give the justice jurisdiction, and to uphold his judgment when attacked collaterally.

And the justice having jurisdiction, his error in subsequently issuing a summons, and holding the cause open until its return, will not render his judgment entirely nugatory.

Such a judgment, though erroneous, is regular and valid until reversed; and an execution issued thereon, and a sale of property upon it, will be regular and lawful, and will not become irregular or unlawful by the subsequent reversal of the judgment. PARKER, J. dissented.

ACTION brought to recover the value of property claimed to belong to the plaintiff, and alleged to have been wrongfully converted by the defendant. The defense was that the defendant caused the property to be taken and driven away by virtue of an attachment issued out of a justice's court, and that he caused the property to be sold by virtue of an execution issued on a judgment rendered in said attachment suit. The plaintiff's answer to that was, that the defendant

caused the property to be taken away under an attachment issued in favor of himself and one Hume, and caused it to be sold and driven away by virtue of an execution issued on the judgment rendered in said attachment suit. That the attachment was void for the reason that the affidavit was not sufficient to give the justice jurisdiction. That the judgment rendered thereon was void for the reason that the affidavit did not give the justice jurisdiction, and a summons was improperly issued on the return of the attachment and proceedings thereby stayed for six days, by which the justice lost his jurisdiction, if he ever had any; and that the judgment has been reversed and altogether held for nothing, thereby vacating all the proceedings, which reversal relates back, wipes out all trace of the proceedings, and they are no longer a protection to the person instituting them.

On the trial, the plaintiff proved the taking and carrying away of the property by one Bush, a constable, under the direction of the defendant, upon an attachment issued by F. W. Foote, a justice of the peace of Delaware county, in favor of the defendant Grant, and one Hume, against James Kissock. And the property was sold by said Bush, by virtue of an execution issued on a judgment in favor of said Hume and Grant, against Kissock, in the attachment suit. The plaintiff read in evidence the docket of the justice, in the suit before him, and the papers on which the proceedings were instituted; among which was the following affidavit made by Grant:

"*Delaware county, ss:* James A. Grant, jr., being duly sworn says, that James Kissock is justly indebted to him and Robert T. Hume, on a demand arising on contract, in the sum of fifty dollars, as near as this deponent can estimate the same, over and above all discounts which the said Kissock has against them, and the application for an attachment against the property of said James Kissock which accompanies this affidavit, is made on the ground that the said James Kissock has departed from the said county of Delaware, where he has

lived, with the intent to cheat and defraud his creditors, as this deponent verily believes. And this deponent further says, that the facts and circumstances upon which he founds his belief, are as follows: That on the 25th day of January, 1858, said Kissock started from Hobart with a load of butter, for Catskill, for this deponent and R. T. Hume, in company with other teams; that said Kissock, previous to starting, stated to deponent that he wanted to start early in the morning, so that he could go to Catskill and back again in four days; that the other teams went out and back the same week on Friday or Saturday, and the said Kissock had not returned, as deponent was informed by the wife of said Kissock on Friday last, and deponent believes that said Kissock has not yet returned to this village, the place of his residence; said Kissock's wife informed deponent that she was afraid he had left her; that he told her he was going only to Catskill, and that if any thing happened that he could not come home at the usual time, he was in the habit of writing to her, and that she had not since he left received any letter or other intelligence from him. Deponent says that said Kissock bought a buffalo skin at the store of McNaught & Grant on the morning that he left, and he informed his wife that the same had been lent to him by the firm aforesaid, as she informed this deponent; and deponent further says, that said Kissock is considerably involved and in debt, and deponent verily believes said Kissock has not property sufficient to pay his debts; that deponent received a letter from R. T. Hume yesterday, written in New York, as appears by the date and postmark, Feb. 9th, 1858, in which deponent is informed and believes that some of the packages of butter sent by said Kissock had not at that time been received by him in New York, to which place the same was to have been sent by said Kissock; that deponent is informed by John Cowan, who returned from New York yesterday, that he did not see the said Kissock, although he looked after and tried to find him; and that he inquired at several of the public houses in Catskill, where said

Kissock would be likely to leave his team, and the same could not be found; and deponent is informed and believes that the said Kissock, a few days · before he left with the butter, had been collecting accounts which belonged to him and Alexander Stewart, and that he has not paid over any of said money to said Stewart; and deponent believes that the said Kissock has left the county of Delaware, his last place of residence, with an intent to cheat and defraud his creditors, and · that there is danger of losing said demand, unless an attachment is issued against the said Kissock."

The attachment was issued February 11, 1858, and was returnable on the 19th of the same month. On the return day the plaintiff therein appeared, and on his request the justice issued a summons, returnable February 25th. On that day the defendant moved to quash the attachment, which motion was denied. The plaintiff filed his complaint. The defendant did not answer. After hearing the testimony of witnesses on the part of the plaintiff, the justice entered a judgment in his favor for $56.65 damages and costs. And upon that judgment he subsequently issued the execution upon which the property was taken and sold. The plaintiff then introduced in evidence a judgment roll of the county court of the county of Delaware, in all things reversing with costs the said judgment rendered by the justice, filed in Delaware county clerk's office, September 16th, 1858. Also a judgment roll in the supreme court, on appeal, in the same case, from which it appeared that the judgment of the county court was affirmed. The justice, being examined as a witness, stated, on his cross-examination, that he held the case open from the return day of the attachment to the return day of the summons. The plaintiff having rested his evidence, claimed to recover on three grounds: 1st. The affidavit in the attachment suit was insufficient to give the justice jurisdiction, and that all process and proceedings therein were void, and no protection to the defendant who directed the taking and sale of the property. 2d. The summons issued

was unauthorized by the statute, and the justice thereby lost all jurisdiction of the case, and proceedings thereon were therefore void. 3d. The said judgment having before the commencement of this action been in all things reversed, the reversal wiped out all the proceedings, and they were no longer a justification or protection to the defendant who directed the taking and sale of the property. The defendant by his counsel moved for a nonsuit; to which the plaintiff's counsel objected. The court granted the motion, on the ground that the several judgments and proceedings, though voidable were not void, and were a protection to the defendant, and that the plaintiff could not sustain the action, without proving a demand of the defendant of the property taken by virtue of the attachments and executions, after the reversal of the judgments and before the action was brought, and that the plaintiff had failed to make out a cause of action against the defendant; to which decision the plaintiff's counsel excepted. Whereupon the cause upon a bill of exceptions was ordered to be heard in the first instance at a general term, and that all further proceedings in the cause be stayed until further order of this court, &c.

*A. Taylor, Jr.* for the plaintiff.

*William Gleason,* for the defendant.

BALCOM, P. J. I am of the opinion the judgment of the justice was not void. The affidavit, on which he issued the attachment, contained some legal evidence which tended to show the plaintiff had departed from the county of Delaware, where he last resided, with intent to defraud his creditors. (*See Skinnion* v. *Kelley,* 18 *N. Y. Rep.* 355.) It was sufficient to give the justice jurisdiction, and to uphold his judgment when attacked collaterally; and having jurisdiction, his error in subsequently issuing a summons and holding the cause open until its return, did not make his judgment entirely

nugatory. (7 *Barb.* 621.. 7 *Wend.* 200.) It was regular, but erroneous; and was properly reversed for error. It was valid until reversed, and the execution issued thereon and the sale of the property in question, in virtue thereof, were regular and lawful—and did not become irregular or unlawful by the reversal.

In *Turner* v. *Felgate,* (1 *Levinz's Rep.* 95,) a man had a judgment and execution executed, and afterwards the judgment was *vacated* for being unduly obtained, and restitution awarded; then the defendant brought trespass against the plaintiff in the first action for the taking of the goods; and it was adjudged that it well lay against the party; for by the vacating of the judgment it is as if it never had been; *and is not like a judgment reversed by error.* But Justice Twysden said that he was not satisfied with this judgment when it was given, in the time of Glyn, chief justice, nor was he yet for making a man a trespasser by relation, for when the execution was served there was a judgment, though that afterwards the execution was vacated.

It was solely upon this authority that Comyn stated, in his Digest, " So if a man has color of an authority, and afterwards it is vacated and declared to be null, he will be a trespasser *ab initio;* as if a man obtains judgment irregularly, and afterwards takes out execution, the party (though not the officer) will be a trespasser, if the judgment be vacated." (7 *Com. Dig.* 499, *5th ed.*)

The report of the case of *Felgate* v. *Tourner,* (1 *Keble,* 822,) shows that the first judgment against Turner or Tourner was set aside by rule, as irregular. (*See* 1 *Keb.* 453, 488.)

There can be no doubt but that a judgment or execution or other process that has been set aside for irregularity ceases to be any justification for acts done in virtue thereof by the party obtaining the judgment or suing out the execution or other process; and he will be liable for such acts as a trespasser *ab initio.* (*Chapman* v. *Dyett,* 11 *Wend.* 31. *Smith*

---

Kissock *v.* Grant.

---

v. *Snyder,* 15 *id.* 324. *Barker* v. *Braham & Norwood,* 3 *Wilson,* 368.) But a party is never a trespasser or wrong-doer for selling property by virtue of an execution, in due form, issued upon a judgment regularly obtained, though the same be afterwards reversed for error, (1 *Cowen,* 622, 711 *to* 734, 735;) and he is not liable as a trespasser *ab initio* for causing process to be executed, which is regularly obtained, though erroneously granted, and subsequently set aside for error. (3 *Sand.* 323. 19 *Barb.* 283.)

" There is a marked distinction between judgments reversed for error and executions set aside for irregularity. In the latter case, the party is never excused, if the irregularity be such as renders the process void. One case is the fault of the party himself, the other is considered the error of the court." When a judgment is reversed for error, " the execution is valid to the time of reversal. It confers a right on the sheriff to sell, and sanctions all legal acts done under it." (1 *Cowen,* 734, 5.)

If the foregoing views are correct, the sale of the property in question was not wrongful but valid, because it was made by virtue of an execution in due form, regularly issued on a judgment, then in force, and which was valid until reversed for errors committed by the justice who rendered it. The defendant therefore is not chargeable for wrongfully taking or wrongfully converting such property; and the plaintiff was properly nonsuited.

The plaintiff could have had an order, upon the reversal of the judgment, that the money collected thereon be restored to him with interest from the time it was collected. (*Code,* § 369.) Perhaps he may yet obtain such an order; or it is possible he may recover such money of the defendant by action, or sue upon the attachment bond. But we need not point out his remedy if he has any—our present duty will be discharged when we have determined the case in hand.

It follows that the plaintiff's motion for a new trial in the action should be denied, with costs.

CAMPBELL, J. concurred in denying the motion for a new trial.

PARKER, J. dissented, and delivered an opinion, in which he held that the judgment of the justice was void by reason of the insufficiency of the affidavit on which the attachment was issued.

Motion for a new trial denied, with costs.

[BROOME GENERAL TERM, July 9, 1861. *Balcom, Campbell* and *Parker*, Justices.]